UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOANNA LYNN MEIDENBAUER,

                  Plaintiff,

v.                                    **DECISION AND ORDER**
                                              11-CV-1094S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

1.      Plaintiff, Joanna Meidenbauer, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Meidenbauer alleges that she has been disabled since September 2, 2004, and that her impairments render her unable to work. She therefore asserts that she is entitled to disability insurance benefits ("benefits") under the Act. Both Plaintiff and Defendant now bring motions seeking a judgment on the pleadings. For the following reasons, Defendant's is granted and Plaintiff's is denied.

2.      Meidenbauer filed an application for benefits under Title II of the Act on January 30, 2009. The Commissioner of Social Security ("Commissioner") denied her application, and as result, she requested an administrative hearing. She received that hearing before ALJ Marty Pillion on July 20, 2010. The ALJ considered the case *de novo*, and on September 21, 2010, he issued a decision denying Meidenbauer's application for benefits. Meidenbauer, 28 years old at the time of the hearing, filed a request for review with the Appeals Council, but the Council denied that request, prompting her to challenge

Defendant's decision by filing the current civil action on December 29, 2011.[1]

3. On June 13, 2012, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Meidenbauer followed suit by filing her own motion three days later. Briefing on the motions concluded August 17, 2012, at which time this Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

---

[1] The ALJ's September 21, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Meidenbauer has not engaged in substantial gainful activity since her alleged onset date, September 2, 2004 (R. 25);[2] (2) Meidenbauer has several severe impairments, including, among others, spina bifida, the side-effects of several surgeries, and a hyper-contractile bladder (id.); (3) Meidenbauer does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 26); (4) while Meidenbauer has no past relevant work, (5) with several modifications, she retains the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(b) (R. 26). Ultimately, the ALJ concluded that Meidenbauer was not under a disability as defined by the Act from her onset date through the date of the decision. (R. 33.)

10. Meidenbauer raises four challenges to the ALJ's decision: First, she argues

---

[2]Citations to the underlying administrative record are designated "R."

that the ALJ failed to develop the record with regard to her mental impairments. Second, she contends that the ALJ failed to apply the correct legal standards in determining her RFC. Third, she argues that the ALJ also misapplied legal standards in assessing her credibility. And last, she contends that based on these errors, the hypothetical question posed to the vocational expert was inaccurate. As a result, the expert's opinion – that there are a significant number of jobs that she can perform – is unreliable.

Each contention will be addressed in turn.

11. "Under 20 C.F.R. §§ 404.1520(c) and 404.1521(a), an impairment or combination of impairments is not "severe" if it does not "significantly limit the claimant's physical or mental ability to do basic work activities." Rosado, 805 F. Supp. at 154. Here, the ALJ found that Meidenbauer's generalized anxiety disorder and learning disorder did not cause "more than a minimal limitation in [her] ability to perform the basic mental work activities." (R. 25.) He therefore deemed her mental impairments "nonsevere." (Id.). In arguing that the ALJ erred, Meidenbauer concentrates exclusively on her anxiety. She argues that the ALJ had insufficient information to make the determination that her anxiety was not severe and that he therefore should have ordered a psychiatric evaluation.

12. There is no question that an ALJ has an obligation to develop the administrative record. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996)). But that duty arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination. Ayers v. Astrue, No. 08–CV–69A, 2009 WL 4571840 (W.D.N.Y. Dec.7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y.2002); see also 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician or psychologist or other

medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision"); 20 C.F.R. § 404.1527(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence....").

13.     The evidence concerning Meidenbauer's anxiety is the following: At the hearing, she testified that she was prescribed Xanax because she gets "very nervous," but she had not taken the Xanax at least as of 2009. (R. 713.) She also does not receive treatment for the nervousness. (R. 45.) In 2006, she was evaluated by a neurologist, Dr. Gregory D. Sambuchi. At that evaluation, Meidenbauer told Dr. Sambuchi that she has episodes of trembling and that she will sometimes wake up with anxiety. Dr. Sambuchi found that her symptoms were consistent with "probable panic disorder"; he planned on prescribing Celexa after she was done breast-feeding and he also instructed her to decrease her caffeine intake, as she drank between 3-4 cups of coffee and 2-3 cups of tea each day. (R. 574.)

14.     This is sufficient evidence from which the ALJ could draw the conclusion that Meidenbauer's anxiety is not severe, and this Court finds no error in the decision itself. First, Meidenbauer was evaluated by a neurologist regarding her anxiety; accordingly, ALJ Pillion's refusal to seek another evaluation was not in error, as he was entitled to rely on the examination conducted by Dr. Sambuchi. Further, this report does not suggest that more information is needed; instead, it suggests that Meidenbauer's anxiety is not severe. Although she reported symptoms of anxiety, her chief complaint was pain in her head and legs. And, at a follow-up visit, Dr. Sambuchi concluded that her head pain was "fine." (R. 570.) Moreover, as noted by the ALJ, Meidenbauer herself did not allege that anxiety

6

caused functional limitations. When questioned about her impairments at the hearing, she did not once raise the issue of anxiety. Meidenbauer admitted that she does not receive treatment for this impairment.

15. Meidenbauer's case is thus unlike <u>Prentice v. Apfel</u>, a case on which she relies. 11 F. Supp. 2d 420, 427 (S.D.N.Y. 1998). There, the court found that the ALJ neglected his duty to develop the record. At Prentice's disability hearing, she testified that she would "mostly l[ie] around and cry," and before the hearing she wrote in a form that she was "very depressed and [] always th[ougt] about ending [her] life because [she] fe[lt] worthless." <u>Id.</u> Also, her seemingly severe depression was documented and corroborated by several physicians. <u>Id.</u> Yet, the ALJ disregarded this evidence and "dismissed the possibility of mental impairment in one sentence." <u>Id.</u> at *426. The difference between <u>Prentice</u> and this case is clear: in <u>Prentice</u> there were several indicia of the severity of the claimant's impairment, and therefore the district court correctly found that the ALJ should have inquired further. Here, the evidence demonstrates that her anxiety is not severe, and accordingly, the ALJ needed no additional information to make a determination. This claim is thus rejected.

16. Meidenbauer next challenges the ALJ's RFC assessment. She argues that it is erroneous for three reasons: (1) ALJ Pillion did not consider any mental impairments in his assessment; (2) he did not perform a "function-by-function" analysis; and (3) he incorrectly concluded that her need to catheterize herself could be accommodated by scheduled breaks.

17. The first objection is without merit. After deeming Meidenbauer's mental impairments non-severe, ALJ Pillion explicitly set out that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in

7

'paragraph B' of the mental functional analysis." (R. 26.) He further noted that he considered all Meidenbauer's symptoms. (R. 27.) There is thus no indication that he did not consider Meidenbauer's non-severe mental impairments in determining her RFC.

18. The second objection fares no better. Meidenbauer faults the ALJ for not conducting a function-by-function analysis, which is an "assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources." Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012). This Court, however, finds that ALJ Pillion did adequately consider each of these "functions." For example, he expressly relied on the opinion of consultive examiner Cendrea Bender, M.D. She found that Meidenbauer had moderate limitations in bending, lifting, pushing, pulling, carrying greater than 20 pounds, and sitting or standing for prolonged periods of time. (R. 682.) Meidenbauer also testified that she could lift and carry fifteen pounds. (R. 29.) The ALJ further pointed to Meidenbauer's past work as a waitress and as an assistant massage therapist as evidence of her capacity to perform the necessary functions of sedentary work. (R. 31.) He also cited the four hours per day that Meidenbauer spends alone with her young children as evidence that she can perform at least sedentary work. (R. 31.) Accordingly, "the ALJ adequately explained how the evidence supports his conclusions about the claimant's limitations and discussed the claimant's ability to perform sustained work activities." Casino-Ortiz v. Astrue, No. 06 CIV.0155 DAB JCF, 2007 WL 2745704, at *14 (S.D.N.Y. Sept. 21, 2007) (rejecting an exacting approach that would require ALJs to produce a detailed statement walking through each function.) Further, aside from subjective complaints of pain, there is nothing in the record to suggest that Meidenbauer could not perform the necessary functions of a sedentary job. See 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than

10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . Jobs are sedentary if walking and standing are required occasionally."). This objection is therefore rejected.

19. Finally, this Court turns to Meidenbauer's third objection regarding the RFC – that the ALJ incorrectly concluded that her need to catheterize herself could be accommodated by scheduled breaks.

There is no dispute that Meidenbauer has a hyper-contractile bladder. As such, she voids her bladder frequently. For example, in 2002 before the alleged onset date, treatment notes reflected that she voided twelve times per day and twice per night. (R. 344.) But that was before she began urinary catheterization, where a catheter is inserted into the bladder to extract urine. One of her physicians, Dr. Greenfield, recommended aggressive self-catheterization, up to five times per day. He also noted Meidenbauer could stay dry for two to three hours at time, and that to "maintain skin integrity," Meidenbauer must change her liner or undergarment four to five times per day. (R. 402.)

This appears to be related to Meidenbauer's tethered spinal cord, a condition characterized by an abnormal attachment of the spinal cord to the surrounding tissues. She has undergone three procedures, called "spinal cord releases," to alleviate symptoms of this condition. It is a form of spina bifida, which causes her back and leg pain. At the hearing, she testified that she has had this pain all her life, and that, while it decreases after surgery, it renders her unable to work.

20. Taking these symptoms, diagnoses, and complaints into account, the ALJ rendered the following RFC:

> The claimant has the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. 404.1567(a), in work environments without concentrated exposure to dusts, fumes,

9

> orders, gasses, chemicals, poor ventilation, wetness or humidity, consistent with the following restrictions: only occasional balancing, stooping, crouching, crawling, squatting, kneeling, or climbing of ramps and stairs; and no climbing of ladders, ropes, and scaffolds. Further, the claimant requires normal regularly scheduled bathroom breaks that can be accommodated in the morning, at lunch, and in the afternoon. Finally, the claimant must be able to stand for approximately five minutes after every hour of sitting.

(R. 26.)

21. Meidenbauer argues that ALJ Pillion's RFC did not account for her need to self-catheterize five times per day. But this is not so. The RFC specifically allows for "regular" bathroom breaks, at which she could self-catheterize and change her undergarments. Even if Meidenbauer was limited to three bathroom breaks per day, she offers no reasons why she could not complete the remaining two catheterizations in the roughly 16 hours of non-work time. As the ALJ found, "the claimant's testimony that she catheterizes on her own schedule indicates that she could continue to treat her bladder condition during the normal [workday]." (R. 31.) Further, in the same report where Dr. Greenfield recommended that she self-catheterize five times per day, he noted that while she can completely empty her bladder, she has no leaking with increased abdominal pressure.

22. To be sure, this Court is cognizant of that fact that this is, at the least, an inconvenient condition. And one that surely causes Meidenbauer distress. But the RFC properly accounted for her limitations by ruling out all but sedentary work, and allowing for regular bathroom breaks and time to stand up to alleviate back pain. This is consistent with her own testimony that she cannot sit for longer than one hour and that she feels pain after prolonged sitting. (R. 46.) It also consistent with her work history. She worked "on and off" as a waitress from 2000–2006, but stated that she was unable to perform ths job

adequately because of pain in her feet, legs, and back – not because of problems related to her bladder. (R. 51-52.) Finally, it also significant that there is no medical opinion that endorses a finding of disability due to this, or any, impairment.

23. As such, this Court finds that there is sufficient relevant evidence that a "reasonable mind might accept as adequate to support [the ALJ's] conclusion." See Richardson, 402 U.S. at 401. Indeed, if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." Rosado, 805 F. Supp. at 153. Accordingly, Meidenbauer's claim in this regard is rejected.

24. Meidenbauer next argues that the ALJ improperly discredited her testimony. Meidenbauer's argument on this point is, however, vague and conclusory. In essence, she simply disagrees with the ALJ's assessment that her symptoms are not as intense or severe as she claims them to be. But, in light of the discussion above, this Court finds the ALJ's assessment to be valid and it finds no error requiring remand. Indeed, "[t]he ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). And a claimant's testimony is only credited "to the extent that alleged limitations can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4). The ALJ heeded those maxims.

25. Finally, Meidenbauer argues that due to the ALJ's errors, the vocational assessment, which was predicated on the RFC, was also in error. But because this Court has found that the ALJ committed no error in rendering the RFC, it finds, as a corollary,

11

that the vocational assessment was also sound.

26. Accordingly, having found ALJ Pillion's opinion to be supported by substantial evidence and devoid of reversible error, Meidenbauer's motion for judgment on the pleadings is denied and the Commissioner's motion is granted.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: November 12, 2012
       Buffalo, New York

    /s/William M. Skretny
    WILLIAM M. SKRETNY
    Chief Judge
    United States District Court